J-S15010-26                    2026 PA Super 163

ESTATE OF: P.H., AN ALLEGED           :   IN THE SUPERIOR COURT OF
INCAPACITATED PERSON                  :        PENNSYLVANIA
                                      :
                                      :
                                      :
APPEAL OF: P.H.                       :
                                      :
                                      :
                                      :
                                      :
                                      :   No. 2272 EDA 2025

Appeal from the Decree Entered July 25, 2025
In the Court of Common Pleas of Philadelphia County Orphans' Court at
No(s):  1173AI of 2024

BEFORE:   OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

OPINION BY OLSON, J.:                        **FILED JULY 29, 2026**

Appellant, P.H., appeals from the July 25, 2025 order entered in the

Court of Common Pleas of Philadelphia County that appointed Edythe Shapiro

("Ms. Shapiro") as plenary guardian of the person and estate of Appellant after

a jury, on May 13, 2025, adjudicated Appellant a totally incapacitated person.

We are constrained to remand this case for a period of 60 days from the date

hereof to conduct further proceedings in accordance with this decision.

The trial court summarized the factual circumstances as follows:

Thomas Jefferson University Hospital [("the hospital") began
providing] medical care and services to [Appellant on] May 9,
2024, when [the hospital] admitted him due to his complaints [of]
abdominal pain, distention[,] and urinary retention.  [As of May
13, 2025, Appellant] remained [admitted to, and under the care
of, the hospital.  Appellant] had been deemed [by the hospital to
be] medically stable for discharge to a long-term care facility a
few months after his admission, but [Appellant] declined to
engage in discharge planning to a facility that would have
accepted him.  [Appellant] insisted on discharge to an osteopathic

_____

[*] Former Justice specially assigned to the Superior Court.

hospital to perform surgery on his hips, rather than to an assisted living facility where he felt it was unlikely that he would ever be able to obtain the hip surgery he needs [to regain] mobility. [Appellant] has a diagnosis of schizoaffective disorder with psychotic features and a history of delusional disorder among other medical conditions.

Trial Court Opinion, 12/10/25, at 2 (record citation omitted; formatting modified).

On September 30, 2024, the hospital filed a petition for the adjudication of incapacity and for the appointment of a plenary guardian of Appellant's person and estate. In the petition, the hospital alleged that Appellant was incapacitated, and "due to [the] functional limitations associated with his mental and physical conditions, [was] unable to receive and evaluate information effectively[ and] unable to make and communicate decisions concerning his physical health, safety[,] and [] living arrangements." Petition for Adjudication of Incapacity, 9/30/24, at ¶ 6. The hospital further alleged that Appellant was "unable to manage his financial affairs" and was "in need of a guardian of his person to handle his personal, medical affairs, including making end[-]of[-]life decisions, as well as to make decisions regarding where he shall reside and how his care shall be provided." *Id.* at ¶ 7.

Appellant retained private counsel and, on December 12, 2024, filed an answer to the petition, as well as new matter that requested an independent

medical examination and a jury trial to determine Appellant's capacity status.[1] On January 7, 2025, the trial court granted Appellant's request to be evaluated by an independent medical examiner. Based on Appellant's request for a jury trial, the trial court bifurcated the issue of capacity from the issue as to whether, or not, the appointment of a plenary guardian was necessary.

On May 13, 2025, a jury found that Appellant's ability to receive and evaluate information effectively and communicate decisions was impaired to such a significant extent that he was "totally unable to manage his finances" and "totally unable to meet essential requirements for physical health and safety." N.T., 5/13/25, at 95-96. In other words, the jury found Appellant to be a totally incapacitated person. *See* 20 Pa.C.S.A. § 5501 (defining "incapacitated person" as "an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he [or she] is partially or totally unable to manage his [or her] financial resources or to meet essential requirements for his [or her] physical health and safety"). On June 7, 2025, the trial court

_____

[1] Section 5511(a) of the Probate, Estates and Fiduciaries Code states that the hearing to determine whether or not a person is incapacitated "may be closed to the public and without a jury unless the alleged incapacitated person or his counsel objects. The hearing shall be closed and with or without a jury if the person alleged to be incapacitated or his counsel so requests." 20 Pa.C.S.A. § 5511(a). Section 777 of the Probate, Estates and Fiduciaries Code states that "[a]ny person against whom proceedings have been instituted to establish his [or her] incapacity shall be entitled to a trial of such issue by a jury." 20 Pa.C.S.A. § 777(b).

- 3 -

conducted a guardianship hearing, and subsequently made the following findings of fact:

1. [Appellant] is [71] years old and is a domiciliary of the City and County of Philadelphia[, Pennsylvania.]

2. [Appellant] has been diagnosed with schizoaffective disorder with psychotic features and a history of delusional disorder and other medical conditions, which impair his ability to receive and evaluate information effectively or manage his finances.

3. [A] jury found that [Appellant] was totally impaired as to his capacity to manage his person or estate.

4. The record shows that [Appellant] needs guardianship services.

5. There are no less restrictive alternatives to guardianship, having ruled out a power of attorney, an advance health care directive, or supported decision-making because there are no individuals who are willing or able to serve in those capacities.

6. [Appellant] has declined to provide his informed consent to any less restrictive alternatives to guardianship.

Trial Court Final Decree, 7/25/25, at 5-6. Thereupon, the trial court appointed Ms. Shapiro as plenary guardian of Appellant's person and estate. *Id.* at 6. This appeal followed.[2]

Appellant raises the following issues for our review:

1. [Whether the trial] court should have declined jurisdiction over [Appellant] under the Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act [("UAGPPJA")], 20

_____

[2] Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Pa.C.S.[A.] §§ 5901[ - 5992] since Pennsylvania was not [Appellant's] home state[?]

2.    [Whether] the evidence was insufficient for the jury to find that [Appellant] was a totally incapacitated person[?]

Appellant's Brief at 4.

Appellant's first issue challenges the trial court's decree that appointed a plenary guardian of his person and estate after a jury adjudicated him a totally incapacitated person on the ground that the trial court lacked *in rem* jurisdiction under the UAGPPJA. *Id.* at 9-12; *see also In re Avery*, ___ A.3d ___, 2026 WL 1732098, at *24 (Pa. Super. filed Jun. 16, 2026) (slip opinion) (stating, "a proceeding involving the capacity status of a person is an *in rem* action, binding against the whole world, **provided that** the [trial] court issuing the judgment had *in rem* jurisdiction over the *res* [(namely a person's capacity status)]" (emphasis in original)).

A challenge to a trial court's *in rem* jurisdiction to adjudicate an individual incapacitated and appoint a guardian raises a pure question of law for which our standard of review is *de novo* and our scope of review is plenary. *Hanrahan v. Ketch*, 243 A.3d 219, 222 (Pa. Super. 2020).

In 2012, the Pennsylvania General Assembly enacted the UAGPPJA with the intent that the UAGPPJA would provide "the exclusive jurisdictional basis for a court of this Commonwealth to appoint a guardian or issue a protective order for an adult." 20 Pa.C.S.A. § 5912; *see also Avery*, ___ A.3d ___, 2026 WL 1732098, at *18-*19. According to the UAGPPJA, a trial court has *in rem* jurisdiction

to appoint a guardian or issue a protective order for a respondent if one of the following paragraphs applies:

(1) This Commonwealth is the respondent's home state.

(2) On the date the petition is filed, all of the following subparagraphs apply:

(i) This Commonwealth is a significant-connection state.

(ii) One of the following clauses applies:

(A) The respondent does not have a home state, or a court of the respondent's home state has declined to exercise jurisdiction because this Commonwealth is a more appropriate forum or has declined to exercise jurisdiction in a manner not inconsistent with a determination that this Commonwealth is a more appropriate forum.

(B) The respondent has a home state; a petition for an appointment or order is not pending in a court of that state or another significant-connection state; and, before the court makes the appointment or issues the order:

(I) a petition for an appointment or order is not filed in the respondent's home state;

(II) an objection to the court's jurisdiction is not filed by a person required to be notified of the proceeding; and

(III) the court in this Commonwealth concludes that it is an appropriate forum under the factors set forth in section 5916 (relating to appropriate forum).

(3) All of the following subparagraphs apply:

(i) This Commonwealth does not have jurisdiction under either paragraph (1) or (2).

(ii) The respondent's home state and all significant-connection states have declined to exercise jurisdiction because this Commonwealth is the more appropriate forum or has declined to exercise jurisdiction in

a manner not inconsistent with a determination that this Commonwealth is a more appropriate forum.

(iii) Jurisdiction in this Commonwealth is consistent with the Constitution of the United States and the Constitution of Pennsylvania.

(4) The requirements for special jurisdiction under section 5914 (relating to special jurisdiction) are met.

20 Pa.C.S.A. § 5913.  This Court recently explained that

The UAGPPJA takes a "cascade approach" to determining which state has *in rem* jurisdiction over a person's capacity status and estate.  States that adopted [a version of the UAGPPJA] have created cooperative, jurisdictional tiers among themselves.[3]

The *res* is no longer stuck in one state, and multiple states do not have to compete for jurisdiction over it.  Instead, the *res* flows down the UAGPPJA tiers from higher-priority states into lower-priority states.  The jurisdictional priorities, from highest to lowest, are: 1) the court in the respondent's home state; 2) the court of a state with which the respondent has a significant connection; or 3) a third state that is neither the home state nor a significant-connection state.

*Avery*, ___ A.3d ___, 2026 WL 1732098, at *25 (citations, original footnote, and some quotation marks omitted).  Thus,

[t]he state with the highest jurisdictional priority is the "home state" of the person whose capacity status is at issue.  "Home state" is an idiomatic translation of the Latin word, *domicilium*.  A person's domicile retains primary jurisdiction over that person's capacity status and estate.

_____

[3] The *Avery* Court noted that, as of June 16, 2026, all the States that comprise the United States, with the exception of Florida, Michigan, and Texas, have adopted a version of the UAGPPJA.  *Avery*, ___ A.3d ___, 2026 WL 1732098, at *18.

*Id.* at \*26 (footnote omitted).  The UAGPPJA defines a "home state" as

> One of the following:
>
> (1) The state in which the respondent was physically present, including any period of temporary absence, for at least six consecutive months immediately before the filing of a petition for a protective order or the appointment of a guardian.
>
> (2) If the requirement of paragraph (1) is not met, the state in which the respondent was physically present, including any period of temporary absence, for at least six consecutive months ending within the six months prior to the filing of the petition.

20 Pa.C.S.A. § 5911.

The hospital filed its petition for the adjudication of incapacity and the appointment of a plenary guardian on September 30, 2024.  The six-month period leading up to the filing of the hospital's petition began on March 30, 2024, inclusive of March 30.[4]  As such, if Appellant was physically present in Pennsylvania on March 30, 2024, and continued to be physically present in Pennsylvania, including any period of temporary absence, until the date the petition was filed, September 30, 2024, then Pennsylvania was Appellant's "home state" and the trial court possessed *in rem* jurisdiction over the *res*,

_____

[4] **See** 1 Pa.C.S.A. § 1910 (stating, "[w]henever in any statute the lapse of a number of months after or before a certain day is required, such number of months shall be computed by counting the months from such day, excluding the calendar month in which such day occurs, and shall include the day of the month in the last month so counted having the same numerical order as the day of the month from which the computation is made, unless there be not so many days in the last month so counted, in which case the period computed shall expire with the last day of such month").

*i.e.*, Appellant's capacity status. ***Id.***, ***see also In re Avery***, ___ A.3d ___, 2026 WL 1732098, at *24.

In his answer, Appellant admitted that he became a patient of the hospital on May 9, 2024. Appellant's Answer and New Matter, 12/12/24, at ¶ 1; ***see also*** Petition for Adjudication of Incapacity, 9/30/24, at ¶ 1. The hospital is located in Philadelphia, Pennsylvania. Appellant remained at the hospital beyond September 30, 2024, the date on which the hospital filed its petition. Appellant further admitted that, prior to his admission to the hospital, he resided with a friend at a residence located in Philadelphia, Pennsylvania. Appellant's Answer and New Matter, 12/12/24, at ¶ 3; ***see also*** Petition for Adjudication of Incapacity, 9/30/24, at ¶ 3. The record is unclear, however, as to the length of time that Appellant resided at his friend's residence in Pennsylvania, and the trial court made no factual finding as the length of such residency.

In its findings of fact and conclusions of law, the trial court found that Appellant was "a domiciliary of the City and County of Philadelphia[, Pennsylvania.] Final Decree, 7/25/25, at § III, ¶ 1. The trial court, however, did not expand upon the basis for reaching its finding. In its Rule 1925(a) opinion, the trial court stated the following:

> We have operated under the **premise** that [Appellant's] "home state" is Pennsylvania for purpose of the [UAGPPJA]. The petition in this matter was filed by [the hospital] on September 30, 2024, almost [five] months after [Appellant] had been admitted [to the hospital]. Before his admission, [Appellant] resided with a friend [at his residence located in Philadelphia, Pennsylvania], which [Appellant] admitted in his answer to the petition. [Appellant's

friend] has served as [Appellant's] power of attorney since 2013. Based upon the record[,] it can be reasonably **inferred** and it is understood that [Appellant], a self-described "seasonal" resident of Pennsylvania, had been physically present in Pennsylvania as a resident and then a patient for at least six consecutive months before the petition for adjudication was filed.

Trial Court Opinion, 12/10/25, at 9 (extraneous capitalization omitted; emphasis added). We cannot find support for the trial court's inference in the certified record presently before us. Therefore, based upon the record currently before us, we are unable to determine whether, or not, Pennsylvania qualifies as Appellant's "home state" under the UAGPPJA. *See* 20 Pa.C.S.A. § 5911.

Section 5913(1) of the UAGPPJA, however, is not the only means by which the trial court could obtain *in rem* jurisdiction over the matter. Section 5913(2) confers jurisdiction in a trial court to decide the capacity matter if, *inter alia*, the Commonwealth is a "significant-connection state." 20 Pa.C.S.A. § 5913(2)(i). For Section 5913(2) to confer *in rem* jurisdiction, however, it must be determined that the respondent has, or does not have, a "home state." In this case, as explained *supra*, we are unable, based upon the record presently before us, to determine whether, or not, Pennsylvania, or another state, serves as Appellant's home state.[5]

---

[5] Similarly, because we are unable to determine, based upon the record currently before us, whether the trial court has *in rem* jurisdiction over the matter pursuant to Section 5913(1) or (2), Section 5913(3) cannot be relied upon to confer jurisdiction on the trial court. *See* 20 Pa.C.S.A. § 5913(3)(i) (listing as a requirement for jurisdiction under UAGPPJA that the "Commonwealth does not have jurisdiction under [Section 5913(1) or (2)]").

As such, we are constrained to remand this case to the trial court for the purpose of determining, *inter alia*, the length of time that Appellant resided at his friend's residence in Philadelphia, Pennsylvania. If Appellant began his residency in Pennsylvania on or before March 30, 2024, then Pennsylvania would qualify as Appellant's "home state" and the trial court would have had *in rem* jurisdiction over the matter pursuant to Section 5913(1). If Appellant did not reside at his friend's residence on or before March 30, 2024, then the trial court must make the necessary factual findings in order to reach conclusions as to whether, or not, the trial court had *in rem* jurisdiction over the matter pursuant to Section 5913(2) or (3). We, therefore, remand this case to the trial court for a period of 60 days hereof for the purpose of determining whether, or not, *in rem* jurisdiction was obtained in Pennsylvania pursuant to Section 5913 of the UAGPPJA.

Case remanded. Jurisdiction retained.